This is my sworn affidavit:

I, Rochelle Pouget, state the following and have put this on social media because I am being abused by my own law enforcement agencies and the justice system!!! The citizens of NH need FEDERAL HELP!

WHAT DO THEY (Investigators) NOT UNDERSTAND ABOUT REAL ESTATE FRAUD AND THIS SENTENCE? **"which shall be held in escrow pending the refinance of the debt into James' sole name, at which point the deed shall be released."** This evidence has been given to the Hillsborough County AG's Office and John Coughlin REFUSES to INVESTIGATE THIS CRAP! Not only did my deceased ex-husband commit Real Estate Fraud, his attorney did, my lender Salem Five did, their law firm Harmon Law Offices, and the new buyers (realtors from Remax in New Ipswich I believe) who created an LLC and are trying to evict my child and me and get me to pay $3k a month on the house they are stealing from us.

This is not an infighting situation between our family. My step-son is fully aware of the fraud he was sucked into when his father lied to him on his deathbed and he wants no part of it. We are united as a family and will not allow the NH Family Court corruption to divide us ever again.

This is Real Estate Fraud that occurred after my parental rights were fraudulently removed by an impeached judge (Philip Cross) who has been enabled to prey on other unsuspecting victims for a decade after his impeachment, Kysa Crusco, and Patricia Murphy. I have no doubt in my mind it has happened to others and will continue to happen to other unsuspecting families unless the public outrage causes such an uproar, they have to prosecute those who are preying

on families in NH Family Courts. Do your own research if you don't believe me. Look up Lawyerratings.com and see what Kysa Crusco has been up to. She is a Guardian ad Litem and an attorney and she lies on sworn affidavits and under oath to profit from intentionally disrupting the judicial process. When you are assertive enough to call her out on it, she has plenty of people with "POWER" in Family Courts and GAL Boards to help her. Todd Prevet was or still is on the GAL Board and he used to be the NBPD Prosecutor. He is also involved in Jordan Geoffroy's case and Kysa is the attorney in that one. Jordan had his little girl taken away for a year and a half due to Kysa's lies. When I went to watch his hearing because he invited me, Kysa filed a stalking petition against me. I fought that and it was dismissed, but this is the kind of crap they do to people who call them out on their manipulation and racketeering schemes.

Most people (victims of this judicial abuse that is being ignored by John Coughlin, DOJ, AG, Public Integrity Unit) go out and hire an attorney OR FOUR to help them and spend thousands to get nowhere because there are judges involved in this as well. They are for sure Philip Cross and Suzanne Gorman. I have white out on my court orders where they presided over my case. I've posted some, not all of the photos.

 This has been going on for ten years at least in Goffstown and who knows how many years in other districts. It's a well-oiled machine and the only way to stop it is to expose it publicly and demand action, which I'm doing now and have done for ten years, and file Federal Complaints for intentional Obstruction of Justice, Real Estate Fraud, etc.

You can do this on behalf of your children until they are 18 or 19 in NH. Trust me, Olivia Achokitis is suing the NBPD for a reason. She is of legal age now. These predators are

obstructing justice in a criminal harassment case right now and I've already had many of them served in this Federal Complaint. If you were wronged or harmed by the actions of the following people when they had the following titles, you can air your grievances on this FB page. That is what it is for. I have the hard evidence in my case and that is why I'm speaking about the abuses.

I've filed my Federal Complaint and I get to add three more people, fun stuff: GAL/ Attorney Kysa Crusco, Sherry Bisson Nashua Court Clerk also on the JCC Board, Todd Prevet GAL Board former NBPD Prosecutor and he might even be a judge, Attorney Mitch Utell, Attorney Mark Campbell, Attorney John F. Bisson, Impeached but still judging Philip Cross, Judge Suzanne Gorman, Gloria Gidari Deputy Court Clerk Goffstown, Chief James Brace of the NPBD, Sgt. Loveless of the NBPD, Sgt. Aiken of the NBPD, Sgt. Masella of the NBPD, Dick Tracey at the DOJ, Patrick Queenan DOJ, **Lisa Wolford,** DOJ, Tracy Riehl DOJ (records), Nicholas Chong-Yen NH DOJ (records), Todd Flanagan DOJ, Geoff Ward DOJ, Jeff Strezlin DOJ, Jane E. Young DOJ, David Lovejoy Public Integrity Unit, John Coughlin Hillsborough County AG, Pamela Coughlin Hillsborough County Registrar in 2015, Attorney Patricia A. Murphy. They all have a ton of connections in multiple areas of justice. Jane E. Young is now in Federal land as is Ward and Strelzin, the two people who blew off **ALL of** the complaints against Kysa Crusco that **MULTIPLE** people filed against her, not just me.

They blew off the FACT that these people came to them in total despair because their children were being taken away from them with judicial abuse and manipulation and THEY (MARK PUTNEY HILLSBOROUGH COUNTY INVESTIGATOR) NEVER EVEN CONTACTED THEM TO SPEAK TO THEM AFTER I HAD BEEN PROVIDING HIM HARD EVIDENCE OF HER PROVIDING

FALSE STATEMENTS ON AN AFFIDAVIT TO REMOVE MY RIGHTS BACK in 2014 to FORCE ME

TO COMPLY with my ABUSIVE HUSBAND'S DEMANDS. Once they got me into mediation,

knowing I would never see my child again if I didn't comply with their demands, I signed a Quit

Claim Deed. My attorneys screwed me over after I paid them $25k in ADVANCE for help. They

then went on to help cover up Real Estate Fraud involving my late husband, Attorney Patricia

Murphy, Pamela Coughlin, Kysa Crusco, Philip Cross, and they are covering up the abuses of the

NBPD as well because they want to make it appear this is just a case of a disgruntled cray cray

woman. I'm completely sane and have all my counseling and psychiatric records if anyone

wants to know what's really going on. They forced me to go to a counselor THAT THEY PICKED

in mediation and I wasn't ALLOWED to have my daughter back until they put her/me through a

phased in parenting plan. He didn't have to pay child support or alimony until I completed a

certain amount of counseling sessions (so now they are doctors) and the counselor had to agree

I was okay to have my daughter back are you JOKING ME???? I was a teacher at the time and I

had more than one reputable attorney telling me they are aware of the corruption and NOBODY

IS EFFING DOING ANYTHING ABOUT IT BECAUSE THEY ALL PROFIT FROM IT!!! HELLOOOOOO

NH-the NBPD gets a bigger budget if there are more cases, the attorney gets more business,

even if they SUCK. If they suck and can't get any business they can become a GAL and extend

their cases needlessly and get their GAL fee caps increased by Philip Cross, so they can make

money from lying about you!!!! If they are as sneaky as Kysa they don't investigate the cases,

they just take your money and PRETEND to investigate it and then they will hide your ex's

mental health issues while lying about your character. Then if you ask for a copy of the GAL File

to see what actually got investigated it, they can block you from getting a copy of your own GAL

case file with a court order again that Philip Cross will sign off on. I kid you not, that's what she

did in my case. Philip Cross also prevented me from having an evidentiary hearing to can her,

isn't that nice? That is why they are both named in the Federal lawsuit. My attorney asked her three times for a copy of her file. I did not get a copy of the file in my case until after my rights were taken away and I was forced into mediation and had to give up my home or never see my child again. NICE EH? WTH is going on and where are all the good PATRIOTS who think this is wrong and SHOULD BE HELPING THE CHILDREN OF NH??? I CAN'T DO THIS BY MYSELF AND NEITHER CAN THE OTHER VICTIMS AND THEY ARE BANKING ON THAT!!! Judges and court clerks obviously get paid and counselors, employees at visitations centers, etc. THIS IS THE FLEECING OF NH Citizens and DO NOT ALLOW YOURSELF TO GET CAUGHT UP IN IT! DO NOT GET DIVORCED IN THIS STATE UNLESS YOU WANT TO RISK HAVING YOUR CHILDREN TAKEN AWAY FOR PROFIT!!!! I have paid over $50k in legal fees and I'm still fighting because I KNOW FOR A FACT THIS IS AN ATTACK ON NH FAMILIES!!! I have had AT LEAST 7 families come to me to tell me about Kysa.

So yesterday, May 25th, 2023, I tried to submit evidence in the landlord tennant case. I was told I could not do so. That is, until I asked the Hillsborough County Sheriff's Office to go ask Carly, the court clerk, who it is that told her to tell me I could not submit evidence in my case. She replied, "No Comment" when asked if it was judge Gorman. I've filed a Motion for judge Gorman to recuse herself from my case multiple times and she refuses because she is covering up her own collusion and malfeasance. She dismissed a restraining order against Kysa back in July and there is white out on it completely obscuring what was written in one part and I've asked for an explanation from the Goffstown administration judge, (King) and he won't provide me with the name of the individuals who FEEL it's okay to use multiple court orders for one Order, just stamped in different places or not at all. He won't tell me who is spreading white out all over Philip Cross's recommendations on my Court Orders. I'm sorry, these people need to be held

accountable and restrained from destroying lives.  Judge Suzanne Gorman is withholding

evidence in a criminal case against me right now and Gloria Gidari has been alerting Kysa

Crusco about Motions I'm planning on filing, and most recently that I was in the courthouse (on

other business) and then Kysa Crusco LIED about it to a Superior Court judge!!! GET THE VIDEO

OF THE HEARING OR THE AUDIO OF THE HEARING AND PUT HER IN JAIL FOR MULTIPLE

FALSE STATEMENTS UNDER OATH ALREADY!!! I did NOT go into the courtroom in Goffstown

to watch her hearing. I was there on other business and she told the judge I went into the

courtroom to harass her! It's complete bull, I did not speak to her or go near her. I was standing

at the clerk's office when SHE came out of her hearing and GLARED AT ME!!! I had no idea she

was even there, I was using an office to write motions that I filed that day. I was there the day

before too and have been there gathering evidence of white out felonies that nobody will

investigate since September 2022 and I have every legal right to do so. Even if I did attend her

hearing, I have every legal right to do that too, what is wrong with these people? Did they really

go to law school?


Respectfully,

Rochelle Pouget
20 Lincoln Drive
Pro Se and on behalf of my minor child

5/25/23

Allstate.

Marilyn N. Hebert
36 Larch Street
Goffstown, NH 03102

ROCHELLE POUGET
20 LINCOLN DR
NEW BOSTON NH  03070-4300

## Homeowners policy schedule for the Allstate® Easy Pay Plan

Information as of January 29, 2022

Policyholder
**Rochelle Pouget**

Page **1** of 2

Policy number
**984 363 392**

Your policy provided by
**Allstate Property and Casualty Ins Co**

Covered property
**20 LINCOLN DR
NEW BOSTON NH 03070-4300**

Your Allstate agency is
**Marilyn N. Hebert**
(603) 627-9535



## Automatic installment schedule

The following payments will be credited to your policy on the dates shown below and the funds can be withdrawn from  your bank account as early as the next business day:

| February 2022 | March 2022 | April 2022 | May 2022 | June 2022 | July 2022 |
|---|---|---|---|---|---|
| **18th** **$0.00** | 18th $0.00 | 18th $0.00 | 18th $0.00 | 18th $0.00 | 18th $0.00 |

| August 2022 | September 2022 |
|---|---|
| 18th $0.00 | 18th $71.47 |

Each payment includes a $1.50 installment fee.

NOTE: A $10.00 late fee may be assessed if payment is received after the due date.

**Remember** - Any changes you make to your policy may result in a change in premium.

## What you should know

We recently made a change to your policy that caused your premium to be adjusted.  This change and your adjusted premium are reflected on your current Policy Declarations.

If you have any questions, please contact your agent.
**IMPORTANT NOTICE:** PLEASE KEEP THE SCHEDULE ON THIS NOTICE SO YOU KNOW THE UPCOMING WITHDRAWAL DATES FOR THE REMAINDER OF THIS POLICY PERIOD.

A NEW WITHDRAWAL SCHEDULE WILL ONLY BE SENT TO YOU IF YOUR POLICY IS RENEWED OR IF A CHANGE IS MADE TO YOUR PREMIUM AMOUNT OR DATE.

If you need to make a change to your bank account information contact your Allstate Representative or call 1-800-Allstate®  and complete a new application.

If you wish to be removed from the Allstate Easy Pay Plan contact your Allstate Representative or call 1-800-Allstate® . Please allow 5 business days to stop your deductions.

*(continued)*



Homeowners policy schedule for the Allstate® Easy Pay Plan

Policy number: **984 363 392**
Effective date: **October 19, 2021**
Agency:     Marilyn N. Hebert
            (603) 627-9535

Please do not remit a check to us while on the Allstate Easy Pay Plan.

## Transaction history

| Date | Transaction | Amount | Balance |
|------|-------------|--------|---------|
| 11/27/21 | Previous Balance | | $644.26 |
| 11/29/21 | Payment received - mortgage company | - 644.26 | 0.00 |
| 1/6/22 | Policy change | + 69.97 | 69.97 |
| **Balance (to pay in full)** | | | **$69.97** |

065 070 028
220130 2073675
EBCR19CW220130086564442203A-000916-001-0-00-14

 **Allstate.**

Allstate Property and Casualty Ins Co
PO Box 660649
Dallas, TX 75266-0649

# Homeowners policy bill

SALEM FIVE MORTGAGE COMPANY LLC    ITS SCRS &/OR
ASSIGNS ATIMA
PO BOX 700697
DALLAS TX 75370-0697

Information as of September 16, 2022

Policyholder                          Page **1** of 2
**Rochelle Pouget**

Policy number
**984 363 392**

Your policy provided by
**Allstate Property and Casualty Ins Co**

Covered property
**20 LINCOLN DR**
**NEW BOSTON NH 03070-4300**

Policy period
Effective **October 19, 2022** through
**October 19, 2023** 12:01 a.m. standard time

Your Allstate agency is
**Marilyn N. Hebert**
36 Larch Street
Goffstown, NH 03102
(603) 627-9535

| To pay in full amount due by October 6, 2022 | $2,707.81 |
|---|---|

## Transaction history

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 7/28/22 | Previous Balance | | $23.64 |
| 8/29/22 | Renewal premium | + 2,684.17 | 2,707.81 |
| **Balance (to pay in full)** | | | **$2,707.81** |

You will not be sent a bill until your policy renewal.



### How to save with Allstate

We're always here to help.
For more ways to save† – like Full
Pay, Drivewise® or Easy Pay – log in
to the Allstate® mobile app or
allstate.com/myaccount.

†Subject to terms, conditions and availability.

*Detach bottom portion here* ▼

## Return this portion with your payment                    10/19

 **Allstate.**

| To pay in full amount due by October 6, 2022 | $2,707.81 |
|---|---|

**Amount enclosed**

$            .

*Make check or money order
payable to Allstate Property and
Casualty Ins Co. Please include
your policy number. Allow five
days for delivery.*

ALLSTATE PROPERTY AND CASUALTY INS CO
PO BOX 660649
DALLAS TX 75266-0649

Policyholder
**Rochelle Pouget**

Policy number
**984 363 392**

*Do not write address or policy
change requests on this return
portion, contact your agency.*



/0650700289000000984363392101960270781800000000002707818/

Homeowners policy bill

Policy number: 984 363 392

Effective date: October 19, 2022

Agency: Marilyn N. Hebert
(603) 627-9535

 **Allstate**

Allstate Property and Casualty Ins Co
PO Box 660649
Dallas, TX 75266-0649

# Homeowners policy bill

SALEM FIVE MORTGAGE COMPANY LLC   ITS SCRS &/OR
ASSIGNS ATIMA
PO BOX 700697
DALLAS TX 75370-0697

Information as of November 16, 2022

| Policyholder | Page **1** of 2 |
|---|---|

**Rochelle Pouget**

Policy number
984 363 392

Your policy provided by
**Allstate Property and Casualty Ins Co**

Covered property
**20 LINCOLN DR**
**NEW BOSTON NH 03070-4300**

Policy period
Effective **October 19, 2022** through
**October 19, 2023** 12:01 a.m. standard time

Your Allstate agency is
**Linda Nutter Krantz**
3 Orchard View Dr. #
Londonderry, NH 03053
(603) 437-6800

---

**To pay in full amount due by December 6, 2022**                  **$23.64**

## Transaction history

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 9/16/22 | Previous Balance | | $2,707.81 |
| 10/6/22 | Payment received - mortgage company | - 2,684.17 | 23.64 |
| **Balance (to pay in full)** | | | **$23.64** |

You will not be sent a bill until your policy renewal.

## What you should know

The **Minimum Amount Due** includes a Past Due Amount of $23.64.
If you have any questions, please contact your agent.



**How to save with Allstate**

We're always here to help.
For more ways to save¹ – like Full
Pay, Drivewise˚ or Easy Pay – log in
to the Allstate˚ mobile app or
allstate.com/myaccount.

¹Subject to terms, conditions and availability.

---

*Detach bottom portion here* ▼

......................................................................................................................................

**Return this portion with your payment**                      10/19

 **Allstate**

**To pay in full amount due by December 6, 2022**          **$23.64**

**Amount enclosed**

$_____._____

*Make check or money order
payable to Allstate Property and
Casualty Ins Co. Please include
your policy number. Allow five
days for delivery.*

ALLSTATE PROPERTY AND CASUALTY INS CO
PO BOX 660649
DALLAS TX 75266-0649

Policyholder
**Rochelle Pouget**

Policy number
**984 363 392**

*Do not write address or policy
change requests on this return
portion, contact your agency.*



/06507002890000009843633921019600023648000000000000023648/

Homeowners policy bill
Policy number:  | 984 363 392 |
Effective date:  **October 19, 2022**
Agency:         Linda Nutter Krantz
                (603) 437-6800

065 070 028
221116203085A
EBCR19CW221116191644479D5A-001839-001-0-02-14

 **Allstate.**

Allstate Property and Casualty Ins Co
PO Box 660649
Dallas, TX 75266-0649

# Homeowners policy bill

Information as of January 16, 2023

| | |
|---|---|
| Policyholder | Page **1** of 2 |
| **Rochelle Pouget** | |

Policy number
**984 363 392**

Your policy provided by
**Allstate Property and Casualty Ins Co**

Covered property
**20 LINCOLN DR
NEW BOSTON NH 03070-4300**

Policy period
Effective **October 19, 2022** through
**October 19, 2023** 12:01 a.m. standard time

Your Allstate agency is
**Linda Nutter Krantz**
3 Orchard View Dr. #
Londonderry, NH 03053
(603) 437-6800

SALEM FIVE MORTGAGE COMPANY LLC    ITS SCRS &/OR
ASSIGNS ATIMA
PO BOX 700697
DALLAS TX  75370-0697

## To pay in full amount due by February 6, 2023                  $23.64

## Transaction history

| Date | Transaction | Amount | Balance |
|---|---|---|---|
| 11/16/22 | Previous Balance | | $23.64 |
| **Balance (to pay in full)** | | | **$23.64** |

You will not be sent a bill until your policy renewal.

## What you should know

The **Minimum Amount Due** includes a Past Due Amount of $23.64.
If you have any questions, please contact your agent.



### How to save with Allstate

We're always here to help.
For more ways to save[1] – like Full
Pay, Drivewise[*] or Easy Pay – log in
to the Allstate[*] mobile app or
allstate.com/myaccount.

[1]Subject to terms, conditions and availability.

---

*Detach bottom portion here ▼*



## Return this portion with your payment                                    10/19

 **Allstate.**

## To pay in full amount due by February 6, 2023                  $23.64

Policyholder
**Rochelle Pouget**

Policy number
984 363 392

**Amount enclosed**

$ _____ . ____

*Make check or money order
payable to Allstate Property and
Casualty Ins Co. Please include
your policy number. Allow five
days for delivery.*

ALLSTATE PROPERTY AND CASUALTY INS CO
PO BOX 660649
DALLAS TX 75266-0649

***Do not write address or policy
change requests on this return
portion, contact your agency.***



/065070028900000098436339210196000236480000000000023648/

Homeowners policy bill

Policy number: 984 363 392

Effective date: **October 19, 2022**

Agency: Linda Nutter Krantz
(603) 437-6800

06S 070 028
230116202232A
EBCR19CW23011619143473135A-001064-001-0-02-14

The following article was found on : https://journal.firsttuesday.us/delivery-acceptance-and-
validity-of-deeds-2/175/?fbclid=IwAR1gNIE_ZwOyHo-o8GcVaF1OFXZlkJVv-
eBbeHkMDXU3_c4ErTdRbrGLCsM

*This article sets forth the intent necessary for a deed to be considered an enforceable
conveyance which will withstand claims it is void or voidable.*

## Need for delivery, not recording

A deed conveying real estate takes effect and transfers ownership to the named grantee when
the deed is *delivered*. The mere signing of a deed by the owner as the grantor is not enough to
divest the owner of his title to an interest in the real estate. Delivery of the signed deed is
required.

*Delivery* refers to two separate acts:

- the grantor's **intent to convey title**, not just the physical handing over of the deed
  to the grantee; and
- the grantee's **acceptance** of the grant deed as an immediate conveyance.

While the grantor may intend to convey title when he hands over the deed, if the grantee **does
not accept** the deed, the deed will not be considered delivered and a conveyance does not
occur.

The grant deed need not be recorded to deliver title to a new owner or to revest title in two or
more individuals. Recording *perfects* the ownership against unknown off-record interests and
later buyers or encumbrancers.

For example, a mother, son and daughter hold title to real estate as joint tenants.

The mother and daughter later sign a grant deed to their undivided two-thirds interest in the
property and deliver it to themselves as joint tenants. The deed is not recorded.

The mother passes away, and the son seeks ownership of a one-half interest in the property.
The son claims the unrecorded grant deed does not sever the joint tenancy between the
mother, daughter and himself.

The daughter claims the son only holds a one-third interest in the property since joint tenants
who execute deeds to one another do not have to record the deed to sever the joint tenancy.
Is the son entitled to a one-half interest in the property as one of the surviving joint tenants?

No! The grant deed between the mother and the daughter who were both joint tenants only needed to be delivered, not recorded, to sever the joint tenancy. Thus, the son owns no more than his original one-third interest in the property. [Re v. Re (1995) 39 CA4th 91]

## Constructive delivery

The delivery of a deed is inferred when the grantee receives or has possession of the deed. The deed may also be considered delivered without the grantee having or holding actual possession of the deed.

Even if the grantee does not have possession of the deed, the deed is not necessarily void. When a grantee is not physically handed the deed, a *constructive delivery* of the deed may have taken place.

**Constructive delivery** of a deed to the grantee is deemed to have occurred if:

- by an agreement between the grantor and the grantee when the grantor signs the deed, the deed is understood by both to be delivered; or
- the deed is delivered to a third party for the benefit of the grantee, and the grantee or an agent of the grantee demonstrates the grantee's acceptance of the deed. [Calif. Civil Code §1059]

## Grantor's intent to convey

Without the owner's *intent to convey* title as a grantor, a deed will not be considered delivered, even if the grantee is handed the grant deed and accepts physical possession of the deed as a delivery.

Consider an owner who hands a grantee a gift deed. The owner orally states the deed is not to be effective until he dies, and if the grantee dies first, the deed must be returned to the owner. The owner of the real estate does not intend the deed to immediately convey ownership of the real estate to the grantee.

The owner dies, and the grantee records the deed. Heirs of the owner assert they own the real estate, claiming the deed is invalid since the owner did not intend to convey ownership when the deed was handed to the grantee and thus the deed cannot be considered delivered.

The grantee believes the deed is a valid conveyance of the real estate, claiming delivery took place when the owner personally handed him the deed and he accepted it.

However, to be a *valid delivery*, both the owner and the grantee must intend for title to the real estate to be **conveyed concurrent** with the handing of the deed to the grantee. The owner of

the real estate must intend for the instrument that conveys the real estate to operate as a deed which **immediately divests** the owner of title.

Since the owner intended the deed to become operative only on his death, as evidenced by the his actions and statements when the deed was handed to the grantee, the deed is also considered an improper probate avoidance device, and is void, conveying nothing.

A deed cannot act as a will or revocable inter vivos (living) trust agreement. A will and an inter vivos trust agreement are *testamentary documents* which take effect on the owner's death. Upon entering into a will or trust agreement, the owner does not give up control or ownership until death.

Conversely, a deed is a document intended to pass fee simple (or other estate) immediately on delivery. If the grantor does not intend to pass fee simple (or other estate) on handing the deed to the grantee, no delivery takes place and the deed is void. [In re Estate of Pieper (1964) 224 CA2d 670]

Now consider a property owner who conveys real estate to a grantee by grant deed. The grant deed states the owner reserves a life estate for himself. The grant deed is delivered to the grantee, who takes possession of the grant deed but not the real estate.

The grantee under the deed reserving a life estate for the grantor is not entitled to possession of the property until the grantor dies. However, the deed is valid and title to the property has been conveyed to the grantee in spite of the deed's reservation of a life estate since the owner intended to convey title. [White v. Hendley (1921) 185 C 614]

### Grant deed as mortgage-in-fact

Usually a grant deed is used with the intent to pass full legal title to the described property when it is handed to the grantee or recorded by the grantor.

However, when a grant deed is intended to convey title to a lender as *security* for a loan, the grant deed does not transfer the right of ownership. The grant deed given as security – collateral – is a *mortgage-in-fact* which imposes a *lien* on the property in favor of the lender – as does a trust deed.

For example, an owner needs a loan but has poor credit. A private lender agrees to lend the owner the needed funds. The private lender receives a grant deed to the property as security in the event of default on the loan. The real estate is to be *reconveyed* to the owner when the loan is fully repaid.

The owner retains possession of the property and remains responsible for the payment of taxes, a trust deed lien of record, and maintenance of the property. Usually, the grant deed to the lender is coupled with a lease and option to repurchase the property on an installment program (rent) with a final/balloon payment (on exercise of the option).

Before the loan is repaid, the owner seeks to sell the property.

The owner's broker's investigation of the title on record shows the property is vested in the name of the private lender. The broker questions whether his client is the true owner and can convey title if the property sells.

Here, the owner *is* the legal owner of the property and the lender simply holds a lien on title. The owner and the lender entered into a loan arrangement in which the grant deed was intended to be used as a *security device* until the loan is repaid, not to convey ownership of the real estate. [Orlando v. Berns (1957) 154 CA2d 753]

Brokers who arrange loans should use a trust deed as the device which attaches the debt as a lien on real estate. Using a grant deed as a security device is improper. A grant deed is generally equated to the grantor's intent to convey all rights and title in the property to the named grantee.

A trust deed does not convey any ownership rights in the property to the lender. Rather, a trust deed imposes a lien on the property in favor of the lender to secure the owner's performance of an obligation owed the lender. On executing a trust deed, the borrower retains all ownership rights to the secured property.

## Conditional delivery

A deed cannot be delivered conditionally to the grantee.

A deed handed to the grantee or received by constructive delivery is considered an *absolute conveyance*. Any conditions imposed by the grantor which are not stated in the deed are unenforceable. Once a deed is delivered, it operates free from conditions not written in the deed. [CC §1056]

The **conditional delivery rule** only applies to deeds handed to the *grantee*, and does not apply when the deed is conditionally delivered to a *third party*, such as an escrow agent, broker or attorney. A deed delivered to a third party with instructions to hand the deed to the grantee on the occurrence or performance of a condition is valid. [CC §1057]

For example, a seller opens escrow and hands escrow his grant deed with written instructions authorizing escrow to deliver the deed when the buyer has fully performed and escrow is in a position to close.

Escrow later unconditionally delivers the deed to the buyer on the close of escrow. Escrow causes the deed to be recorded with the county recorder, who, in turn, mails the deed to the grantee under return-of-document instructions set forth on the deed.

Once placed in escrow, the grant deed can only be returned to the grantor if the grantee fails to perform as agreed, or by mutual instructions to escrow. Escrow will only release documents on written instructions from both parties.

## Deed erroneously released

Now consider a seller whose broker locates a buyer who agrees to purchase the seller's real estate. Escrow is opened. The seller signs and delivers instructions to escrow together with his grant deed. Escrow is authorized to use the grant deed to transfer ownership of the property to the buyer at the close of escrow.

The instructions state the deed is to be recorded and forwarded to the buyer when the buyer performs as agreed. The instructions further state the deed is to be returned to the seller if the buyer fails to perform by the date specified in the instructions.

The buyer does not perform as agreed. However, escrow mistakenly records the grant deed. The deed is mailed to the buyer by the recorder.

Did the buyer receive title to the real estate?

No! Escrow did not follow the seller's instructions regarding recording and delivery of the deed on closing. The escrow's unauthorized recording and the buyer's possession of the deed is improper since delivery was not intended by either party. Thus, title was not conveyed and the deed is void. No interest was ever conveyed. [Hildebrand v. Beck (1925) 196 C 141]

## Irrevocable escrow creates life estate

Consider an owner who hands a deed to his broker or attorney under written instructions to hold the deed until the his death. On death, the deed is to be delivered to the grantee. Under the instructions, the owner does not retain the right to withdraw or revoke the deed.

Has the owner delivered an enforceable deed to the third party?

Yes! The owner's act of depositing the deed with a third party while relinquishing further control over the deed constitutes delivery of the deed and concurrently transfers title to the individual

named as grantee. The third party becomes the *agent* of the grantee. The owner's interest in the real estate is reduced to a life estate on delivery since the owner intends to retain possession and use of the property until death. [Husheon v. Kelley (1912) 162 C 656]

Further, once the owner deposits his deed with a third party and relinquishes all control over the deed, the owner's later destruction of the grant deed, such as ripping it up, or the redelivery of the grant deed back to the owner, does not reconvey title. [CC §1058]

Also, an owner's instructions to an escrow to record the deed when escrow can close creates a presumption of delivery, even if the owner dies before escrow closes. It is presumed the owner intended to presently convey title to the property, even if the owner dies before the close of escrow. [Osterberg v. Osterberg (1945) 68 CA2d 254]

## Acceptance by the grantee

A grantee is *presumed* to have accepted the deed if the grant is beneficial to the grantee.

For example, an owner of real estate deposits in an escrow or with a broker a deed conveying real estate to the named grantee. The owner's written instructions accompanying the deed state the deed is to be further delivered to the grantee on the owner's death.

The instructions contain no provisions for the owner's withdrawal of the deed from escrow.

Thus, the owner retains no power to revoke the deed.

However, the grantee is not aware of the grant conveying title to the real estate.

On the owner's death, the third party delivers the deed to the grantee.

Is the deed considered valid even though the grantee, being unaware of the deed, did not formally accept the deed?

Yes! The delivery of the deed to the third party with instructions to deliver the deed to the grantee on the owner's (grantor's) death is considered *constructive acceptance* by the grantee – even though the deed's existence was then unknown to the grantee. The conveyance of the property was for the grantee's benefit. A deed is considered accepted by the grantee when the deed is conditionally delivered to a third party. [Windiate v. Moore (1962) 201 CA2d 509]

Also, a deed is **presumed to be accepted** and the conveyance complete if the deed is:

- physically handed to the grantee [California Trust Co. v. Hughes (1952) 111 CA2d 717];
- recorded by the grantee [Drummond v. Drummond (1940) 39 CA2d 418]; or
- in the grantee's possession. [California Trust Co., *supra*]

## Conditional acceptance by grantee

The **conditional acceptance** of a deed by the grantee does not constitute delivery. A deed is not effective until the grantee or his agent *unconditionally accepts* the deed. [Green v. Skinner (1921) 185 C 435]

For example, a secured lender initiates foreclosure proceedings on an owner's property. The owner does not want a foreclosure as it would adversely affect his credit. Thus, the owner offers to deed the property to the lender in exchange for cancellation (satisfaction) of the debt secured by the property, called a *deed-in-lieu of foreclosure*.

However, the lender states the deed will not be accepted until:

- the property is free of any encumbrances; and
- the title is insured under a policy by an insurance company.

The owner hands the lender the deed-in-lieu. However, a title search discloses a junior trust deed lien exists on the property. The lender proceeds with the foreclosure and does not record or rely on the deed-in-lieu since the condition of title is unacceptable to the lender.

The junior lienholder discovers the existence of the unrecorded deed-in-lieu and claims the lender cannot foreclose since the lender accepted the deed-in-lieu subject to the junior trust deed (which would then become a first trust deed).

However, the lender agreed to accept the deed only on confirmation of the status of title. The grantee's receipt of a deed, with acceptance of the deed conditioned on confirmation of the title condition, is not a binding conveyance of real estate.

A deed is effective when handed to the grantee only if the grantee unconditionally accepts the deed. The lender did not receive the deed with the intention of accepting delivery of the deed as an immediate conveyance of title. [Brereton v. Burton (1938) 27 CA2d 464]

Now consider a borrower who, aware of the lender's conditions for accepting a deed-in-lieu, records the deed with instructions to the recorder to mail the deed to the lender. The borrower's intent is to force acceptance on the lender since the lender's conditions regarding junior liens cannot be met.

If the lender is unwilling to accept the deed when received from the recorder, the lender must act (in a writing or litigation) to state that the deed is not accepted. The borrower cannot force the lender to accept a deed to property by simply recording it. The conveyance, while clouding

the enforceability of the lender's trust deed, is ineffective until the lender's conditions for acceptance are met.

## Consideration given for a deed

A grantor's receipt of consideration is not necessary for a voluntary conveyance of real estate by deed. A deed is not void for lack of consideration received by the grantor for conveying the property. [CC §1040]

Further, without fraud or misrepresentation on the part of a buyer of real estate, a deed cannot be voided or rescinded by the seller for the buyer's failure to pay the balance due on the purchase price. A delivered deed is not void or voidable and the title remains with the buyer when the buyer fails to tender the balance of the purchase price he agreed to pay to the seller. The seller, having conveyed the property, can only recover his money losses in a judgment. [Lavely v. Nonemaker (1931) 212 C 380]

However, if the buyer promises to pay a portion of the purchase price after taking title and the deferred payment on the price is unsecured, the seller is entitled to a *vendor's lien* on the property sold for the portion of the price that remains unpaid.

Also, when a grantor conveys real estate to a grantee for the purpose of avoiding creditors by stripping the grantor/debtor of his assets, the conveyance can be set aside by the creditors as a *fraudulent conveyance*. [CC §§3439 et seq.]

A conveyance will be considered fraudulent if:

- the owner intends to defraud creditors by avoiding payment;
- a reasonably equivalent value is not received by the owner in exchange for the property transferred; and
- the owner is or will be insolvent on the conveyance, or he intended or should have known he would incur debts beyond his ability to pay. [CC §3439.04]

## Recording the grant deed

To convey real estate, the deed does not need to be recorded. A deed that is delivered conveys an interest in real estate even if the deed is not capable of being recorded.

For example, title to an owner's undivided one-half interest in real estate is vested in the owner and a co-owner as joint tenants.

The owner signs and delivers a deed conveying the property to a grantee, an act which severs the joint tenancy with the co-owner. The owner's signature on the deed is not acknowledged by a notary public, a requisite to its being recorded. [Calif. Government Code §27287]

The co-owner claims the deed signed by the owner (now deceased) was not delivered since the grantor's signature on the deed was not acknowledged.

However, delivery of the deed is not affected by the fact that the deed was not acknowledged or recorded. The owner's delivery of the deed to the grantee was sufficient to sever the joint tenancy. [Gonzales v. Gonzales (1968) 267 CA2d 428]

A deed need only be recorded to put future buyers or encumbrancers on notice of the transfer. Recording the deed *perfects the interest* conveyed against others who might later claim an ownership, security or leasehold interest in the property.

A deed capable of being recorded with the county recorder must include:

- identification of the person requesting the recording and to whom the document will be returned by the county recorder, indicated at the top left hand corner of the deed [Gov C §27361.6]; and

- the address where and to whom tax statements are to be sent by the county tax collector, indicated at the bottom of the first page. [Gov C §27321.5]

Failure to identify the person requesting the recording of the deed, where the deed is to be sent after recording, and where the local real estate tax statements are to be sent does not affect the validity of the deed or the *constructive notice* to others implied by recording the deed. [Gov C §§27321.5; 27361.6]

The deed submitted for recording must also include the amount of documentary transfer tax to be paid. The deed will not be recorded by the recorder unless the **documentary transfer tax** is paid at the time of the recording. An additional transfer tax may be charged by the city, county or both the city and the county. [Calif. Revenue and Taxation Code §§11901 et seq.]

A deed submitted for recording, which constitutes a change of ownership and is subject to reassessment under Proposition 13, should be accompanied by a **change of ownership statement** for the county assessor. [Gov C §27280; Rev & T C §480]

If the deed submitted to the county recorder does not include a change of ownership statement, the recorder will record the document and either:

- include a change of ownership form with the return of the recorded deed; or

- provide the assessor with the identification of the recorded document not accompanied by the change of ownership statement. [Gov C §27321]

Also, a notary public acknowledging an individual's signature on a deed affecting the title to real estate, such as a grant deed, quitclaim deed or trust deed, will require the individual to place his thumbprint in the notary's journal. The **thumbprint requirement** does not apply to the recording of a trustee's deed or a reconveyance of a trust deed. [Gov C §8206(a)(2)(G)]

## Void vs. voidable deeds

Void and voidable are terms which seem similar but are distinguishable by the date they affect the validity of a deed.

*Void deeds* are unenforceable and never convey an interest in the real estate at any time, a concept called *void ab initio* – void from the beginning.

If title is claimed under a void deed, the claim of ownership must fail, even if the grantee purchased the property in good faith without any notice of a defect in title or in the conveyance.

For example, a seller has been adjudicated as insane and unable to manage his affairs (incompetent). The court appoints a guardian to manage the seller's affairs.

A buyer, unaware of the seller's condition or guardianship, purchases real estate from the seller. The buyer obtains a grant deed to the property from the seller.

Is the deed on the sale of the real estate a valid conveyance since the buyer was unaware of the seller's condition and paid a fair value for the property?

No! Prior to the conveyance, a court found the seller to be incompetent and appointed a guardian. The appointment of a guardian by the court is considered notice to all of the seller's condition – whether or not a notice of appointment is recorded – since adjudication of the seller's incompetence is considered notice.

Thus, the buyer's status as a bona fide purchaser of title from an adjudicated incompetent does not shield the deed from being set aside. The deed was void at its inception, without legal effect at any time. [CC §40]

Other examples of **void deeds** include:

- a deed signed and delivered by a seller under the age of 18 – incapacity [Calif. Family Code §6701];
- a deed handed to the grantee with the intent it is not to be effective until the owner's death – conditional delivery [Estate of Pieper, *supra*];

- a deed materially altered without the grantor's consent [Tannahill v. Greening (1927) 85 CA 714]; or
- a forged deed. [Meley v. Collins (1871) 41 C 663]

## Voidable deeds

A voidable deed, unlike a void deed, is a deed which is valid and enforceable after delivery – until it is challenged because of a defect and a court order declares the deed to be invalid. Examples of *voidable deeds* include:

- a deed obtained through false representations, such as a grantee who acquires title at a trustee's sale by claiming to have superior knowledge concerning the property in order to misrepresent the condition of title and thereby induce the owner to allow the property to be foreclosed on [Seeger v. Odell (1941) 18 C2d 409];
- a deed obtained through undue influence or threat, such as imprisoning and restraining the owner until the owner signs a grant deed [Campbell v. Genshlea (1919) 180 C 213]; or
- a deed from a grantor of unsound mind, but not entirely without understanding, made before the grantor's incompetency to convey has been adjudicated. [CC §39]

Unlike void deeds, a voidable deed is enforceable by a bona fide purchaser or encumbrancer when title is held by the grantee under a voidable but not yet invalidated deed.

For example, a loan secured by real estate is in default. The owner is concerned the property might be sold through foreclosure, affecting his credit rating. The owner is approached by a foreclosure consultant who, through fraudulent threats and harassment, is able to obtain a grant deed from the owner.

The consultant, as the grantee under the deed, takes possession of the property and refinances it by obtaining a new loan to pay off the old loan. The new lender, unaware the grantee obtained the grant deed by fraud, is secured by a trust deed on the property now vested in the name of the foreclosure consultant.

Later, the original owner sues the foreclosure consultant to set aside the deed as voidable. The owner records a notice of pendency of action, referred to as a *lis pendens*. The grant deed is later declared invalid since the grantee, the foreclosure consultant, used threats and undue influence to fraudulently obtain the deed.

Meanwhile, the new lender whose security interest rests on the voidable deed begins foreclosure on the note and trust deed.

The owner, having set aside his deed as voidable, now claims the lender cannot foreclose since the deed on which the lender's trust deed was acquired has been declared invalid.

Can the lender enforce the trust deed created by the grantee under the fraudulent deed which has been declared invalid?

Yes! The deed was voidable, not void, when it was signed and delivered to the grantee who executed the trust deed now in foreclosure. The lender became an encumbrancer before the grantor (prior owner) challenged the validity of the deed to the grantee (foreclosure consultant). Thus, the lender is considered a bona fide encumbrancer for value and entitled to enforce the note and trust deed since the trust deed was recorded before the lender had actual or constructive notice (by the *lis pendens*) of the owner's challenge, which was ultimately successful in having the grant deed declared invalid. [Fallon v. Triangle Management (1985) 169 CA3d 1103]