UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Rochelle Pouget,
     Plaintiff

     v.                           Case No. 22-cv-382-SM
                                        Opinion No. 2023 DNH 093

Kysa M. Crusco; Philip Cross;
Salem Five Bank; Harmon Law Offices;
Sgt. Timothy Loveless; Chief James R. Brace;
Town of New Boston, NH; Patricia Murphy;
John Coughlin; 20 Lincoln Drive, LLC; and NH DCYF,
     Defendants

**O R D E R**

This is the latest in a series of lawsuits that pro se plaintiff Rochelle Pouget has brought against prosecutors, attorneys, investigators, police officers, a bank, its legal counsel, a guardian ad litem, and others – all arising out of a series of domestic disputes that eventually led to her 2014 divorce, the loss of parental rights with respect to her daughter, and, ultimately, the foreclosure of the first mortgage deed securing her home.  In this action, she seeks damages and injunctive relief against eleven defendants.

Of the eleven parties named in Pouget's amended complaint, it appears that only eight have been properly served.[1]  Seven of those defendants move to dismiss Pouget's claims for failure to state a viable cause of action.  For the reasons discussed, those motions are granted.

## Background

Although this is Pouget's first federal suit raising claims arising out of various incidents of domestic violence, her divorce, the loss of her parental rights, and the foreclosure of the first mortgage deed securing her home, she has filed at least three prior state court actions against numerous defendants – all arising out of the same events: Pouget v. Derek Coburn, Executor of the Estate of James Coburn, 216-2022-CV-197 (quiet title action to Pouget's home dismissed for lack of subject matter jurisdiction); Pouget v. Derek Coburn, et al., 216-2022-CV-427 (petition for a restraining order to stop the impending foreclosure of the mortgage deed securing Pouget's home and asserting numerous claims against nearly 30 defendants and dating back roughly a decade, all of which were dismissed

---

[1]    Despite having been granted four extensions of time to effect service, Pouget has not provided evidence of proper service upon the following defendants: DCYF, Patricia Murphy, and Philip Cross.

for a variety of reasons); and <u>Pouget v. Bangs, et al.,</u> 216-2022-CV-788 (raising a number of claims arising out of the foreclosure of the mortgage deed securing Pouget's home, all of which were dismissed).

Pouget's amended complaint is comprised of three separate filings (documents no. 1, 8, and 9).  In total, it spans more than 140 pages, contains numerous exhibits, and describes events that date back more than ten years.  In it, Pouget sets forth a broad array of allegations of misconduct and fraud, but there is no clear legal or factual basis for any of her requests for relief – that is to say, none of her claims sets forth a viable cause of action.  Moreover, the majority of claims she raises in this action have already been litigated and resolved against her in prior state proceedings.  Indeed, a significant portion of Pouget's amended complaint consists simply of photocopies of (or slightly amended versions of) documents she submitted in her prior state court litigation.

The amended complaint is difficult to understand and it is unclear which of the numerous, seemingly-unrelated facts alleged are actually relevant to her various claims against each of the defendants.  Fortunately, in one of Pouget's earlier state-court

actions, the court was able to bring some order to her filings,

discern the relevant background facts, and distill it all into a

fairly brief summary (the names of defendants in this proceeding

are in bold):

> For purposes of this order, the Court assumes the
> truth of the following facts as set forth in the
> plaintiff's complaint and accompanying affidavit.  In
> 2012, the plaintiff filed for divorce from her
> husband.  In November 2012, the plaintiff's husband
> assaulted her, prompting her to call the police.
> Sergeant Aiken of the **New Boston Police Department**
> responded, but failed to properly investigate the
> incident.  In 2013, the plaintiff reported
> additional abuse to the New Boston Chief of Police,
> **James Brace,** but ultimately did not press charges
> against her husband.  During another incident of abuse
> in early 2013, Chief Brace had the plaintiff arrested
> for assaulting her husband, while ignoring the fact
> that the plaintiff's husband had also assaulted her.
> The plaintiff reported this to the Attorney General's
> Office, but investigator Dick Tracy failed to properly
> investigate the claim.
>
> In July 2013, the court assigned Attorney **Kysa Crusco**
> as a guardian ad litem to the divorce case to care for
> the interests of the plaintiff's daughter.  However,
> Attorney Crusco did not properly investigate the case.
> Attorney Crusco hid information from the court, the
> court-appointed psychologist, and the **Division of
> Children, Youth, and Families.**  In 2014, when the
> plaintiff reported an incident of child sexual abuse,
> Attorney Crusco told Chief Brace that she believed the
> plaintiff was lying.  Attorney Crusco attempted to
> have the plaintiff arrested for lying, and petitioned
> to terminate the plaintiff's parental rights.
>
> As part of mediating the divorce, the plaintiff signed
> a quitclaim deed for the property that she held
> jointly with her husband.  The quitclaim deed was to
> be held in escrow for three years to give the husband
> time to either sell or refinance the home.  However,

the quitclaim deed was given to the husband
immediately after the divorce was finalized and he
recorded it.  The plaintiff's husband was later found
in contempt of court for failing to sell or refinance
the home.

In 2019, the plaintiff's husband died.  The plaintiff
attempted to file a plea of title to get the property
back, but her counsel failed to properly pursue the
claim.  The plaintiff's step-son, as executor of the
husband's estate, sought to evict the plaintiff and
her daughter.  The property was eventually placed into
foreclosure after the plaintiff stopped making
payments on the mortgage.

In May 2020, Chief Brace pulled the plaintiff over for
driving without valid plates on her car.  He released
the plaintiff with a warning, but as she was driving
away she called him an idiot.  Chief Brace stopped her
again and gave the plaintiff a citation.  The
plaintiff made a report to the Hillsborough County
Attorney's office, but investigator Mark Putney did
not interview the plaintiff's daughter, who was in the
car, about the incident.  Instead, Mark Putney stalled
the investigation until **County Attorney John Coughlin**
dismissed the case.

Pouget v. Coburn, et al., Case no. 216-2022-cv-00427, N.H.

Super. Ct. (Oct. 17, 2022) ("Pouget I") (Exhibit B to document

no. 37-2).  The court in Pouget I denied Pouget's request to

enjoin the impending foreclosure proceedings and dismissed all

claims against all defendants.  Pouget did not appeal.


After Pouget was unable to stop the foreclosure sale of her

home and failed to secure injunctive or monetary relief against

any of the many defendants named in Pouget I, she brought

another suit in which she challenged the validity of that

foreclosure sale (again, individuals named in this action are in

bold).

> Ms. Pouget has sued **Meghan Bangs**, the winning bidder
> at a foreclosure auction for the subject property at
> 20 Lincoln Drive, New Boston, which took place on
> September 27, 2022; **Harmon Law Offices**, the law office
> which represented the foreclosing lender, **Salem Five**;
> and the Hillsborough County Register of Deeds, who is
> responsible for the Hillsborough County Registry where
> various deeds relative to the subject property have
> been recorded.  The pertinent deeds include the 2006
> deed reflecting the acquisition of the subject
> property by Plaintiff and her deceased ex-husband,
> James Coburn, as joint tenants; a December 31, 2014
> Quitclaim deed by which Plaintiff's interest in the
> marital property was conveyed to James Coburn when
> their divorce was finalized; and a foreclosure deed,
> dated October 2, 2022, into **20 Lincoln Drive, LLC** to
> which Ms. Bangs assigned her acquisition rights after
> the foreclosure auction.  Salem Five was the original
> lender and mortgagee in connection with the 2006
> purchase loan to Plaintiff and James Coburn.  There is
> no dispute that the mortgage was in arrears and that
> Salem Five had a contractual right to foreclose upon
> default for nonpayment.
>
> Ms. Pouget has alleged in various lawsuits, <u>this being
> the third in this Court</u>, that the 2014 title into
> James Coburn and now his estate should be voided based
> on fraud in connection with the deed.  She alleges
> that her ex-husband's divorce lawyer, when she retired
> in 2015, wrongfully gave Coburn the Quitclaim deed,
> which Plaintiff had executed in December 2014 in
> accordance with the final divorce decree conveying the
> property to him. . . .  Plaintiff claims entitlement
> to the real estate, where she has been living with her
> daughter since his death, under the 2006 deed.

<u>Pouget v. Bangs, et al.</u>, Case no. 216-2022-cv-00788, N.H. Super.
Ct. (Dec. 14, 2022) (Exhibit E to document no. 37-2) (emphasis
supplied, footnotes omitted) ("<u>Pouget</u> <u>II</u>").  The court in <u>Pouget</u>
<u>II</u> dismissed all claims against all defendants.  Again, Pouget
did not appeal.


## Discussion

New Hampshire's common law doctrines of res judicata and
collateral estoppel apply in determining the extent to which
Pouget's state court litigation bars any claims asserted in this
litigation.  <u>See</u> <u>Kremer v. Chemical Const. Corp.</u>, 456 U.S. 461,
466, n.6 (1982); <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>,
470 U.S. 373, 380-81 (1984).  The New Hampshire Supreme Court
has summarized those doctrines as follows:

> The doctrine of res judicata precludes the litigation
> in a later case of matters actually litigated, and
> <u>matters that could have been litigated</u>, in an earlier
> action between the same parties <u>for the same cause of</u>
> <u>action</u>.
>
> Collateral estoppel precludes the relitigation by a
> party in a later action of <u>any matter actually</u>
> <u>litigated</u> in a prior action in which he <u>or someone in</u>
> <u>privity</u> with him was a party.

<u>In re Alfred P.</u>, 126 N.H. 628, 629 (1985) (emphasis supplied;
citations omitted).  <u>See also</u> <u>Daigle v. City of Portsmouth</u>, 129

N.H 561, 570 (1987); <u>Morgenroth & Associates Inc. v. State of</u>
<u>New Hampshire</u>, 126 N.H. 266, 270 (1985).


I.   <u>Salem Five Bank and Harmon Law Offices</u>.

At the foreclosure sale of the referenced property, Meghan
Bangs was the high bidder.  Bangs subsequently assigned her
right to purchase the property to 20 Lincoln Drive, LLC.  On
October 3, 2022, the mortgagee (Salem Five) conveyed title to
the property to the LLC by foreclosure deed.  That foreclosure
deed was recorded in the Hillsborough County Registry of Deeds.
<u>See</u> Exhibit to Amended Complaint (document no. 8-1) at 63 of 82.
Not long thereafter, the LLC served Pouget with an eviction
notice, pursuant to which she appears to have been evicted from
the property.  <u>See</u> <u>Id</u>. at 58 of 82.


Although the various documents of the amended complaint do
little to describe the precise claims Pouget is advancing
against Salem Five and Harmon Law Offices, her prayer for relief
provides some insight.  In it, she seeks the following:

> That those who <u>committed fraud</u> with the <u>Quit Claim</u>
> <u>Deed</u> at <u>Harmon Law</u>, <u>Salem Five</u>, and 20 Lincoln Drive
> LLC, be required to either give me my marital
> residence back, free and clear of any debt owed, after
> the Quit Claim Deed is removed from the Hillsborough
> County Registry of Deeds and returned to the Goffstown
> Courthouse where it should have gone after Patricia A.

> Murphy retired, or pay $1,000,000.00 for committing
> <u>fraud</u> against me and causing my minor child and me a
> horrendous amount of emotional trauma.

Amended Complaint (document no. 8 ) at page 9, para. I (emphasis

supplied).


Parenthetically, the court notes that none of the

defendants in this proceeding had anything to do with the

quitclaim deed that is the focus of so much of Pouget's

attention.  In October of 2014, roughly eight years <u>prior</u> to the

foreclosure sale, plaintiff and her former husband were

divorced.  As part of the negotiations attendant to that

divorce, the parties stipulated to the following (which became a

part of their divorce decree):

> **Marital Home**: The former marital homestead of the
> parties located at 20 Lincoln Drive in New Boston, New
> Hampshire is <u>awarded to James</u> <u>free and clear of all</u>
> <u>right, title or interest of Rochelle</u>, subject to all
> costs associated therewith and debt thereon.  <u>Rochelle</u>
> within thirty (30) days of the issuance of this Order
> <u>shall execute a Quitclaim Deed transferring all her</u>
> <u>right, title or interest to James</u> which shall be held
> in escrow pending the refinance of the debt into
> James' sole name, at which point the deed shall be
> released.

Permanent Stipulation, Exhibit to Amended Complaint (document

no. 8-1) at page 34 of 82 (emphasis supplied).  Following her

former husband's death, Pouget began to assert that she had been

coerced and/or duped into granting her former husband that
quitclaim deed and she has argued (in previous litigation) that
it was improperly recorded.  Despite having conveyed all her
interest in the property to her former husband, Pouget believes
she is entitled to remain in the property.  See generally Pouget
II, at 2 ("According to Plaintiff, pursuant to the decree, the
Quitclaim Deed was to be held by her ex-husband's lawyer for a
three-year period during which James Coburn was obligated to
either refinance or modify the loan to relieve Plaintiff from
having any responsibility for repayment of the outstanding loan
or sell the property to pay off the promissory note that the
mortgage secured.  In either event, there was no expectation
that Plaintiff would receive any proceeds, to which she now
claims she agreed as a result of duress.  . . . Plaintiff claims
entitlement to the real estate, where she has been living with
her daughter since his death, under the 2006 deed.") (emphasis
supplied).


     The validity of the foreclosure of the first mortgage deed
to Pouget's home, as well as Pouget's claims against Salem Five
and Harmon Law Offices, were fully, fairly, and finally
litigated in state court.  See Pouget I and Pouget II.  Pouget's
claims against Salem Five and Harmon Law Offices are, therefore,

barred by the common law doctrines of res judicata and/or
collateral estoppel.  Even if they were not barred, however,
those claims fail to state the essential elements of any viable
causes of action and are subject to dismissal on that ground as
well.

II.  20 Lincoln Drive, LLC.

As noted above, 20 Lincoln Drive, LLC acquired the right to
purchase the subject property from Meghan Bangs, the high bidder
at the foreclosure sale.  After acquiring title to the property
by foreclosure deed, the LLC instituted eviction proceedings
against Pouget.

Despite the voluminous nature of Pouget's amended
complaint, the LLC is referenced only twice.  The first
reference alleges that the LLC engaged in some type of fraud or
theft:

> the new buyers [20 Lincoln Drive LLC], who I suspect
> know the attorneys and/or employees at Salem Five,
> have filed Court documents to evict my daughter and me
> and they referenced the wrong deed as well, to get
> around the fact that my home has been stolen from my
> daughter and me and Real Estate Fraud, that has yet to
> be investigated, actually occurred and my daughter and
> I are being abused and kicked out due to corruption in
> law enforcement, collusion, and Family Court
> malfeasance.

Amended Complaint (document no. 8) at page 7, para 23 (emphasis
supplied).  The second reference to the LLC appears in Pouget's
prayer for relief, in which she seeks an order compelling the
LLC "to either give me my marital residence back, free and clear
of any debt owed, after the Quit Claim Deed is removed from the
Hillsborough County Registry of Deeds . . . or pay $1,000,000
for committing fraud against me.").  Id. at page 9, para. I
(emphasis supplied).


    Pouget's earlier, state-court challenges to the validity of
the foreclosure sale were fully, fairly, and finally resolved
against her.  In Pouget I, she was denied an injunction seeking
to prevent the foreclosure from happening.  Then, in Pouget II,
all claims challenging the validity of the foreclosure sale, as
well as her claims of fraud and collusion, were resolved against
her.  See, e.g., Id. at 1 ("There is no dispute that the
mortgage was in arrears and that Salem Five had a contractual
right to foreclose upon default for nonpayment.").  See also Id.
at 3 ("Plaintiff claims that there was some collusion in the
auction sale between Ms. Bangs and the law firm or bank.
However, Ms. Pouget pled and produced insufficient facts at
[the] hearing to support her speculative conclusion.").

Pouget's theories of theft and fraud as they relate to the LLC are, like those she raised in state court against Ms. Bangs, entirely undeveloped and unsupported by factual allegations. One thing is clear however: they rest upon her mistaken belief that the quitclaim deed she gave to her husband during their divorce proceedings is somehow relevant to the subsequent foreclosure proceedings.  It is not.  In fact, the LLC had nothing to do with the preparation or recordation of that quitclaim deed.

For purposes of this litigation, the only relevant document is the mortgage deed that Pouget and her former husband conveyed to Salem Five Mortgage Company on January 31, 2006, and recorded in the Hillsborough County Registry of Deeds in Book 7622, Page 2872.  There is no dispute that the underlying note secured by that mortgage deed went into default.  See, e.g. Pouget I at 7-8.  At that point, Salem Five had the contractual right to foreclose, which it did.  See Pouget II at 4.  See also Foreclosure Deed, Exhibit to Amended Complaint (document no. 8-1) at 63 of 82.  Nothing alleged in the amended complaint supports Pouget's bald assertion that the LLC engaged in theft and/or fraud.  Accordingly, those claims are dismissed for failure to state a viable cause of action.

III. <u>Kysa Crusco and Hillsborough County Attorney John Coughlin</u>.

In her amended complaint, Pouget seeks an order of the court directing that:

> Kysa Crusco and County AG John Coughlin be permanently
> restrained from having any contact with me or my minor
> child and that they be <u>permanently banned</u> from having
> anything to do with any <u>investigations</u> that might be
> in the works or opened up in the future that involve
> my daughter, me, or my marital residence.

Amended Complaint (document no. 8) at page 9, para. E (emphasis supplied). According to Pouget, Attorney Crusco failed to properly investigate certain matters relating to Pouget's 2014 divorce and allegedly hid information from the court-appointed psychologist. <u>See</u> Amended Complaint (document no. 1-1) at 3. With respect to Attorney Coughlin, Pouget says he failed to properly investigate a complaint that Pouget made against her then-husband and Attorney Crusco, <u>see</u> <u>id</u>. at 10, as well as a complaint she made against Chief Brace and members of the New Boston Police Department, <u>see</u> Amended Complaint (document no. 8) at page 4, para. 11.

But, as Pouget herself acknowledges, she previously raised the same claims against Coughlin and Crusco in <u>Pouget I</u>. <u>See</u> Amended Complaint (document no. 1) at 2, para. 2. Those claims were fully, fairly, and finally resolved against Pouget. <u>See</u>

14

Pouget I (Exhibit B to document no. 37-2) at 3-5 (addressing
claims against Attorney Crusco); Id. at 8-9 (addressing claims
against Attorney Coughlin).  They are, then, barred by the
doctrine of collateral estoppel.  To the extent Pouget's current
claims differ from those in Pouget I, they arise from the same
facts and transactions and they could have been pursued in that
earlier state court litigation.  Consequently, they are barred
by the doctrine of res judicata.  See generally E. Marine Const.
Corp. v. First S. Leasing, Ltd., 129 N.H. 270, 275 (1987)
(defining "cause of action" to mean "all theories on which
relief could be claimed on the basis of the factual transaction
in question" and concluding that res judicata bars "a subsequent
suit based upon the same cause of action . . . even though the
plaintiff is prepared in the second action (1) to present
evidence or grounds or theories of the case not presented in the
first action, or (2) to seek remedies or forms of relief not
demanded in the first action") (citations and internal
punctuation omitted).


    Although Attorney Crusco has not yet moved to dismiss the
claims against her, for the reasons discussed above, the court
dismisses them sua sponte, having concluded they are barred by
the doctrines of collateral estoppel and res judicata.

Moreover, none of the claims asserted against Crusco and
Coughlin states a viable cause of action and all are barred by
the applicable statute of limitations.  They are, then, subject
to dismissal on those grounds as well.


IV.   <u>Town of New Boston, James Brace, and Timothy Loveless</u>.

     The Town of New Boston, New Hampshire, Sergeant Timothy
Loveless, and Chief James Brace of the New Boston Police
Department (collectively, the "New Boston Defendants") all move
to dismiss Pouget's claims against them on grounds that none
states a viable cause of action.


     The basis for Pouget's claims against the New Boston
Defendants is entirely unclear.  In her request for relief,
Pouget moves the court to order that:

> The NBPD pay my daughter and me $800,000.00 for all
> the pain and suffering they have caused my daughter
> and me <u>from November 2012 on</u>, while <u>failing to do a
> basic investigation into multiple DV incidents</u> when my
> daughter and I were being repeatedly assaulted and
> emotionally tortured by my husband and [when] my
> daughter ended up being molested repeatedly, due to
> their negligence and intentional interference in my
> divorce/custody case.

Amended Complaint (document no. 8) at page 9, para. K (emphasis
supplied).

16

Those claims were, however, previously raised (or could have been raised) in Pouget I.  See Id. at 6-7.  Pouget is, then, precluded from attempting to relitigate them in this forum.  Moreover, to the extent Pouget's claims turn on defendants' alleged failure to properly investigate her reports of perceived unlawful activity, they fail to state viable causes of action.  As the court observed in Pouget I, "As a general proposition, a private citizen lacks a judicially cognizable interest in the prosecution or non-prosecution of another.  It is for this reason that, generally, a victim has no right to intervene in the criminal case of the accused, to appeal the substantive rulings of the trial court, or to contest the prosecutor's decision to dismiss criminal charges."  Id. at 4-5 (citations omitted).

V.   The Remaining Defendants.

Finally, all claims against defendants DCYF, Patricia Murphy, and Philip Cross are also dismissed, for failure to properly effect service of process.  See Fed. R. Civ. P. 4(m).  Plaintiff initiated this action on September 23, 2022.  Since then, she has been granted four extensions of time within which to properly serve all defendants.  The most recent extension of time for service has expired and Pouget has yet to properly

serve any of those defendants.  Because more than ten months
have passed since Pouget filed her original complaint and
because she has neither sought a further extension nor properly
served DCYF, Patricia Murphy, and/or Philip Cross, the court
will assume that she is no longer interested in pursuing those
defendants.


### Conclusion

For the foregoing reasons, as well as those set forth in
defendants' memoranda (documents no. 22-1; 28-1; 30-1; and 37-1)
none of the claims advanced in the various documents comprising
Pouget's amended complaint states a viable cause of action
against any of the defendants.  Even if the amended complaint
did advance any cognizable claims, they would be barred by the
doctrines of res judicata and/or collateral estoppel and/or the
applicable statute of limitations.  Accordingly, defendants'
motions to dismiss (**documents no. 22, 28, 30, and 37**) are
granted.


Plaintiff's amended complaint is dismissed <u>with</u> prejudice
as to defendants Kysa Crusco, Salem Five, Harmon Law Offices,
the Town of New Boston, Timothy Loveless, James Brace, John
Coughlin, and 20 Lincoln Drive, LLC., as any effort to further

amend that pleading would be futile.  Pouget's claims against defendants DCYF, Patricia Murphy, and Philip Cross are also dismissed, albeit without prejudice, for failure to properly and timely serve those defendants, but with the observation that those claims will likely meet the same fate if asserted again.

All remaining pending motions are denied as moot, including plaintiff's "Motion to Add Two Defendants and to Provide New Evidence of Obstruction of Justice and Real Estate Fraud" (**document no. 27**) and her "Motion to Add New Information" (**document no. 35**).

The Clerk of Court shall enter judgment in accordance with this order and close the case.

　　　　**SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　Steven J. McAuliffe
　　　　　　　　　　　　　　　　　　　　United States District Judge

August 3, 2023

cc:　Rochelle Pouget, pro se
　　　Kysa M. Crusco, pro se
　　　Counsel of Record